**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**CASE NO. 1:20-cv-4776**

**CLASS ACTION**

MSP Recovery Claims, Series LLC, a
Delaware entity,

Plaintiff,

v.


Hereford Insurance Company, a New York
Company,

Defendant.
_____/


**<u>PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES</u>**

Plaintiff, MSP Recovery Claims Series, LLC, a Delaware entity, on behalf of itself and all others similarly situated (the "Class Members"), hereby sues Defendant, Hereford Insurance Company ("Defendant"), and alleges:

## INTRODUCTION

1.      Defendant has systematically and uniformly failed to honor its primary payer obligations under 42 U.S.C. § 1395y, otherwise known as the Medicare Secondary Payer Act (the "MSP Law"), by failing to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses") that should have been paid by Defendant but, instead, were paid by Medicare and/or Medicare Advantage Organizations ("MAOs"). As a result, the cost of those accident-related medical expenses have been borne by Medicare and MAOs to the detriment of the Medicare fund and the public.

2.      More specifically, Defendant is an auto or other liability insurer that provides either no-fault or med-pay insurance to its customers, including Medicare beneficiaries. Pursuant to its contractual obligations with its Enrollees, and under state law, Defendant is to provide coverage for its Enrollees' accident-related medical expenses without regard for whether the Enrollee was at fault for the accident, or on a "no-fault" basis. In the case of automobile and other accidents specifically involving Medicare beneficiaries, Defendant is considered a primary plan under the MSP Law. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan…a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same). Accordingly, Defendant's obligations to pay for accident-related medical expenses on behalf of Medicare beneficiaries is primary relative to Medicare's obligation to pay for those same accident-related medical expenses, which is secondary. Defendant has systematically failed to

make these payments and has, instead, passed on those expenses to Medicare.

3.      Plaintiff's Assignors are MAOs that provide Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. MAOs provide such services pursuant to contracts with CMS in connection with which CMS pays the MAOs a fixed fee per Enrollee and the MAOs provide, at a minimum, the same benefits that Medicare beneficiaries enrolled under Part C of the Medicare Act ("Enrollees") would receive under traditional Medicare. MAOs stand on the same footing as traditional Medicare, including under the MSP Law, which declares that Medicare is a "secondary payer" to all other sources of coverage.  Consequently, if an MAO pays for items and services that are subject to overlapping insurance coverage, the MAO is entitled to recover from the rightful primary payer.

4.      The overriding purpose of the MSP Law is to ensure that Medicare and MAOs do not pay for medical expenses that should be paid instead by primary payers, like the Defendant. Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with accident-related injuries.  Without the MSP Law's private cause of action, Medicare and MAOs, which are required to conditionally pay such accident-related medical expenses promptly, would unjustly bear the burden and the overwhelming expense of such injuries and treatments.

5.      In addition to their obligation to pay for or reimburse Medicare and MAOs' accident-related medical expenses, primary payers like Defendant have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds are Medicare beneficiaries; and (ii) report their primary payer responsibility to the Centers for Medicare and Medicaid Services ("CMS").

6.      Even in the face of the MSP Law's clear legal requirement that primary payers like Defendant pay for accident-related medical expenses, take steps to identify whether their Enrollees are Medicare beneficiaries and report their primary payer responsibility to CMS, primary payers rarely honor their obligations and, instead, take steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MAOs and not primary payers.

7.      In large part, the deliberate and systematic avoidance of payment and/or reimbursement obligations under the MSP Law by Defendant, and primary payers in general, has been successful in its primary objective – *i.e.*, to pass on accident-related medical expenses to Medicare and MAOs, including Plaintiff's Assignors and the Class Members.

8.      To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made by original Medicare or MAOs and providing for the recovery of double damages for instances in which primary payers have failed to honor their payment and/or reimbursement obligations under the MSP Law.

9.      Plaintiff utilizes a proprietary system that matches the health care claims data from its Assignors to the publicly available reporting data from CMS and police crash reports available in limited jurisdictions, as well as the claims data made available by primary payers like Defendant, either voluntarily through a coordination of benefits process or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing, to automate the process of identifying instances in which primary payers like Defendant fail to honor their obligations under the MSP Law.

10.     As described in detail below, Plaintiff's Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and

reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

11.     This action seeks redress for Defendant's flagrant and systematic failure to comply with the MSP Law.

## **NATURE OF THE ACTION**

12.     This is a class action lawsuit under the MSP Law, arising from Defendant's systematic and uniform failure to reimburse conditional payments made by Plaintiff's Assignors and the Class Members on behalf of Enrollees for accident-related medical expenses that it was obligated to pay for in the first instance under a "no-fault" insurance policy.

13.     On behalf of itself and the Class Members, Plaintiff seeks, *inter alia*, double damages under the MSP Law's private cause of action for Defendant's failure to properly reimburse conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period.

14.     Defendant has failed to fulfill statutory duties as a "no-fault" insurer." Specifically, Defendant has systematically and uniformly failed to pay or reimburse conditional payments by the Plaintiff and Class Members on behalf of Enrollees for accident-related medical expenses that should have been covered by Defendant. The Enrollees are Medicare beneficiaries who were enrolled in Medicare Advantage health plans offered or managed by Plaintiff's Assignors and Class Members, all of which are MAOs. Plaintiff's Assignors and the Class Members suffered an injury-in-fact from Defendant's failure to reimburse, and accordingly have standing to sue under

42 U.S.C. §1395y(b)(3)(A).

15.     Plaintiff's Assignors and the putative Class Members provided Medicare benefits to the Enrollees. In numerous instances, the Enrollees suffered injuries related to an accident in connection with which Plaintiff's Assignors and the putative Class Members paid for accident-related medical expenses.[1] Because the Enrollees were also covered by no-fault policies issued by Defendant, Defendant is the primary payer under the MSP Law and either should have paid the accident-related medical expenses or should have reimbursed Plaintiff and the putative Class Members for the conditional payments they made.

16.     Rather than honor its obligations under the MSP Law, Defendant systematically and deliberately takes steps to avoid having to pay the accident-related medical expenses paid by Plaintiff's Assignors and the Class Members on behalf of the Enrollees. These steps include failing to report its primary payer responsibility to CMS. Moreover, Defendant fails to coordinate benefits with MAOs, including specifically with Plaintiff on behalf of Plaintiff's Assignors.[2]

17.     Defendant's deliberate non-compliance with its reporting requirements under the MSP Law and refusal to coordinate benefits with MAOs is designed to avoid detection as the primary payer responsible for the accident-related medical expenses incurred by the Enrollees and, ultimately, avoid having to pay or reimburse conditional payments for such accident-related

---

[1] MAOs are required to promptly pay "clean claims" for medical expenses presented by healthcare providers so that Medicare beneficiaries are not faced with the burden of having to pay such expenses with the hopes of being reimbursed by a primary payer like Defendant. MAOs cannot reasonably expect that a primary payer is liabile for such expenses and/or will pay such expenses in a prompt fashion. Accordingly, any payments made by MAOs, and Medicare for that matter, for accident-related medical expenses are conditional payments subject to reimbursement by a responsible primary payer.

[2] Prior to the filing of this lawsuit, Plaintiff sent correspondence seeking to coordinate benefits with Defendant. Defendant refused Plaintiff's request.

medical expenses.

18.     Upon information and belief, Defendant has failed to report its primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiff's Assignors for accident-related medical expenses on behalf of their Enrollees, for which Defendant had a demonstrated responsibility under the MSP Law.

19.     As described in detail below, Plaintiff's Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MAOs recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

20.     Using the proprietary system designed and developed by Plaintiff's related entity, MSP Recovery, LLC (the "MSP System"), Plaintiff can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[3] to identify claims where Defendant has failed to honor its primary payer responsibility on a class-wide basis.

21.     The MSP System utilizes ICD-9 or ICD-10 CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to identify and obtain information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused

---

[3] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in **Appendix 1** to this Complaint. *See also* Department of Health and Human Services, Centers for Medicare and Medicaid. Medicare Billing: 837P and Form CMS 1500 (2016), https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider.

22.     The MSP System captures data from different sources, including data acquired from outside sources like CMS and data found in publicly-available police crash reports, to identify conditional payments made by Plaintiff's Assignors for their Enrollees' accident-related medical expenses, which should have been reimbursed by Defendant. This claims identification process can also be applied class-wide to the data obtained from Class Members.

23.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiff's Assignors' EDI, Class Members' EDI and Defendant's EDI, to discover and identify conditional payments made by Plaintiff's Assignors for accident-related medical expenses on behalf of their Enrollees for which payment or reimbursement should have been made by Defendant. This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which payment or reimbursement should have been made by Defendant.

24.     Using the MSP System, Plaintiff has identified multiple instances in which Plaintiff's Assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendant. Plaintiff's Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendant's failure to meet its statutory payment and reimbursement obligations.

25.     Plaintiff has identified numerous instances where Defendant admitted, by reporting to CMS, that it was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's Assignors

in connection with accident-related medical expenses that Defendant should have paid or reimbursed. A list of such instances is attached hereto as **Exhibit A**.

26.     The instances include  numerous instances where Defendant is also identified in police crash reports[4] as the insurer that was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment on behalf of Enrollees for conditional payments made by Plaintiff's Assignors in connection with accident-related medical expenses that Defendant should have paid or reimbursed.

27.     The MSP System also identifies numerous other instances in which Plaintiff's Assignors made conditional payments on behalf of Enrollees for which the proper primary payer cannot be identified because either (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law or (ii) police crash reports that would identify the appropriate primary payer are not available to  Plaintiff in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiff's Assignors' EDI with Defendant's EDI, however, would allow Plaintiff to identify with specificity those conditional payments for which Defendant should have paid the accident-related medical expenses and/or reimbursed Plaintiff's Assignors for their conditional payments, but did not actually do so.

28.     Plaintiff has standing to assert claims for those specific exemplars identified in greater detail below, as well as for the greater universe of instances on which Defendant has failed to pay for accident-related expenses and/or reimburse conditional payments made by Plaintiff's Assignors.

---

[4] Police crash reports are only publicly available in a handful of jurisdictions, including Florida, Texas, Ohio and Connecticut.

## PARTIES, JURISDICTION AND VENUE

29.     Plaintiff is a Delaware series limited liability company with a principal place of business located at 2701 S. Lejeune Rd., 10th Floor Miami, FL 33134. Plaintiff's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of Plaintiff.

30.     Plaintiff has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other Company assets, and in order to account for and associate certain assets with certain particular series. All designated series form a part of Plaintiff and pursuant to Plaintiff's limited liability agreement and applicable amendment(s), each designated series will be owned and controlled by Plaintiff. Plaintiff may receive assignments in the name of Plaintiff and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, Plaintiff will maintain the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by Plaintiff in its own name or it may elect to bring suit in the name of its designated series.

31.     Plaintiff's limited liability agreement provides that any rights and benefits arising from assignments to its series belong to Plaintiff.

32.     Defendant is a New York company with its principal place of business at 3601 43rd Avenue, Long Island City, New York 11101.

33.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question).

34.     Venue is proper under 28 U.S.C. § 1391(b)(2) in the United States District Court

Southern District of New York because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

35.    This Court has personal jurisdiction over Defendant because the cause of action accured in this judicial district, and personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

## STANDING ALLEGATIONS

36.    Numerous Assignors have assigned their recovery rights to assert the causes of action alleged in this Complaint to series LLCs of Plaintiff,[5] which maintains the legal right to sue on behalf of each of its designated series LLCs. Specifically, pursuant to Plaintiff's limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations … and other health care organizations or providers authorized by state or federal law … to pay for, provide or arrange for the provision of medical and health care services or supplies to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid. The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company. **For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series**.

Section 2 of Second Amendment of Limited Liability Company Agreement of MSP Recovery Claims, Series LLC (amending Section 2.3, entitled "Purpose," to include the language quoted above) (emphasis added).

---

[5] The assignments to the various Series LLCs of Plaintiff are alleged in detail in **Appendix 2** to this Complaint. All of those assignments are valid and binding contracts, and confer standing on Plaintiff to pursue the claims asserted herein.

37.    As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the Assignors that should have been paid, in the first instance, by Defendant.

38.    Each of the individual claims set forth herein has been assigned to Plaintiff. The claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiff's right to bring this cause of action.

39.    The allegations set forth herein plainly demonstrate that Plaintiff's Assignors suffered damages as a direct result of Defendant's individual failure to reimburse conditional payments as required under the MSP Law.

40.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

41.    Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

42.    Once an MAO (or Medicare Payer) makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

43.    The items and services received by and paid on behalf of Plaintiff's Assignors' Enrollees, including A.B. below, were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

44.    By way of example, Plaintiff sets forth the exemplar below to illustrate Defendant's systematic and uniform failure to fulfill its statutory duties as a "no-fault" insurer. In this case, Defendant has reported and admitted its primary payer responsibility for the accident-related

medical expenses for medical items and/or services provided to the Enrollee within ten (10) days of the accident and for which Plaintiff's Assignor made conditional payments.

### The Exemplar No-Fault Claims

**A.    The *A.B.* Claim Demonstrates Plaintiff's Right to Recover for Defendant's Failure to Meet its Reimbursement Obligations under the MSP Law**

45.    On  August 6, 2016,  A.B. was enrolled in a Medicare Advantage plan issued by Health Insurance Plan of Greater New York ("EHTH"). EHTH is an MAO.

46.    On August 6, 2016,  A.B. was injured in an accident.  At the time of the accident, A.B.'s accident-related medical costs and expenses were also covered under a no-fault policy issued by Hereford Insurance Company under policy number CA228650.  By virtue of its no-fault policy Defendant was contractually obligated to pay and provide primary coverage for A.B.'s accident-related medical expenses.

47.    As a direct and proximate result of the accident, A.B. sustained injuries that required medical items and services.

48.    A list of the diagnosis codes and injuries assigned to A.B. in connection with A.B.'s accident-related treatment is attached hereto as **Exhibit B**.

49.    The medical providers subsequently issued bills for payment of the accident-related medical expenses to A.B.'s MAO, EHTH.

50.    As A.B.'s  MAO, EHTH was fully responsible for all medical expenses incurred by A.B.   EHTH paid $2,056.00 for A.B.'s accident-related medical expenses.  The medical provider actually billed and charged EHTH $5,144.00 for A.B.'s accident-related medical expenses.

51.    Defendant is liable to pay Plaintiff because it was A.B.'s primary payer by virtue

of a no-fault insurance policy which covered A.B. for the accident-related medical expenses detailed herein.

52.      In fact, Defendant reported and admitted to CMS that it was the primary payer for A.B., including information regarding the accident, the name of the reporting entity, and the type of insurance policy involved.

53.      This reporting demonstrates that Defendant was aware of the accident and its responsibility to reimburse EHTH.  A true and correct copy of Defendant's report to CMS is attached hereto as **Exhibit C**. Despite Defendant's reporting that it was a primary payer, and the corresponding admission that it should have paid for A.B.'s accident-related injuries, Defendant failed to do so, giving rise to a claim under the MSP Act.

54.      Accordingly, Plaintiff is entitled to collect double damages against Defendant for its failure to reimburse EHTH's conditional payment for A.B.'s accident-related expenses.

## Additional Allegations Common to All Claims

55.      Plaintiff has the legal right to pursue this MSP Act cause of action pursuant to a series of valid assignment agreements.[6]

56.      Each of the individual claims set forth herein has been assigned to Plaintiff. The claims are not subject to any carveouts, exclusions, or any other limitations in law or equity that would impair Plaintiff's right to bring this cause of action.

57.      The allegations set forth herein plainly demonstrate that Plaintiff's Assignors suffered damages as a direct result of Defendant's individual failure to reimburse conditional

---

[6] The applicable language from the assignment agreements can be found in the attached Appendix 2.

payments as required under the MSP law.

58.    In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury."

59.    Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

60.    Once an MAO (or Medicare Payer) makes a payment for medical items and services on behalf of its Enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

61.    The items and services received by and paid on behalf of A.B. were reasonable and necessary to treat the injuries suffered by each Medicare beneficiary.

62.    All purported conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendant.

63.    Pursuant to Plaintiff's limited liability agreement and Delaware law, all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belongs to Plaintiff. Therefore, Plaintiff may likewise pursue EHTH's right to recover reimbursement of Medicare payments that should have been paid, in the first instance, by Defendant.

## CLASS ALLEGATIONS

64.    This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 21, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-related medical expenses, when Defendant should have made those payments as primary payer

and should have reimbursed the Class Members.

65.     As discussed in this class action Complaint, Defendant has failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiff, as the rightful assignee of those organizations that assigned their recovery rights to Plaintiff, and to all Class Members. Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case, thus, is well suited for class-wide resolution.

66.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendant to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendant's failure to reimburse Plaintiff  and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

67.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

      a.  **<u>Numerosity</u>**:  Joinder of all members is impracticable. Upon information and belief, there are hundreds of MAOs and first tier entities (including its assignees) throughout the United States who were not reimbursed by Defendant under a policy which provided PIP or Med Pay coverage for medical expenses arising out of accidents. Thus, the numerosity element for class certification is met.

      b.  **<u>Commonality</u>**: Questions of law and fact are common to all members of the Class.

Specifically, Defendant's misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendant failed to make reimbursement payments, and report their Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendant failed to comport with their statutory duty to pay or reimburse the Assignors pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiff seeks to enforce its own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C beneficiaries, as a result of Defendant's practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. **<u>Typicality</u>**: Plaintiff's claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiff's and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representative, Plaintiff possesses the same interests and suffered the same injury as the other Class Members, which demonstrates a legally sufficient nexus between Plaintiff's claims and the Class Members' claims. Plaintiff's claims are typical of the Class Members' claims because Defendant failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do by their contractual obligations with

Enrollees. Plaintiff's claims are typical because Plaintiff, like the Class Members, have a right to relief for Defendant's failure to make primary payments, or reimburse Plaintiff and Class Members for conditional payments of the Enrollees' accident-related medical expenses. Plaintiff's and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendant's business practices, acts and omissions are materially the same with respect to Plaintiff's and the Class Members' claims, as will be Defendant's legal defenses. Plaintiff's claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiff and the putative Class Members. In addition, Plaintiff is represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**: Locating members of the Class would be relatively simple, since CMS maintains records of all MAOs, first tier entities, and downstream entities, and providing notice to such entities would could be accomplished by direct communication.

68. The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("Damages Class"). Defendant, whether deliberately or not, failed to make required payments under the MSP Law and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiff, thus depriving Plaintiff, as assignee of the right to

recovery, and Class Members of their statutory right to payment and reimbursement.

69.      It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiff maintains a reasonable methodology for generalized proof of Class-wide impact, using the "MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiff is capable of using the MSP System to identify and quantify Class Members' claims, as it has done for its own claims.

70.      Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated Assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

71.      Administering the proposed Damages Class will be relatively simple. Defendant provided no-fault policies with claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiff can determine which of the policy

holders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiff

and the Class Members can identify those payments made for medical treatment where the

Defendant was (1) the primary payer and (2) for which reimbursement was not made.

## CLASS DEFINITION

72.    The putative class (hereinafter referred to as "Class Members") is defined as:

### Contractual Obligations Class

All Medicare Advantage Organizations (or their assignees) that provide benefits under
Medicare Part C, in the United States of America and its territories, who made payments
for a Medicare beneficiary's medical items and services within the last six years from the
filing of the complaint where Defendant:

(1) is the primary payer by virtue of having a contractual obligation to pay for the items
and services that are required to be covered by the policy of insurance of the same Medicare
Beneficiaries; and

(2) failed to pay for the items and services or otherwise failed to reimburse Medicare
Advantage Organizations (or their assignees) for the items and services that were provided
related to the claims of the Medicare Beneficiaries;

This class definition excludes (a) Defendant, their officers, directors, management,
employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action
and any members of their immediate families.

73.    All conditions precedent to the filing of this lawsuit have occurred, been performed,

or have been otherwise waived by Defendant.

## CAUSES OF ACTION

74.    Plaintiff's claims result from Defendant's failure to pay or reimburse Medicare

payments which are secondary, as a matter of law, and must be reimbursed if a primary payer is

available. Defendant issues liability insurance policies and is thus a primary payer liable under the

MSP Law.

## COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

75.    Plaintiff incorporates by reference paragraphs 1through 85 of this Complaint.

76.    Plaintiff asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of itself and all similarly-situated parties.

77.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendant's status as a primary plan; (2) the Defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

78.    Defendant's no-fault policies are primary plans, which rendered the Defendant a primary payer for accident-related medical expenses.

79.    As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiff's Assignors paid for items and services which were also covered by no-fault policies issued by Defendant.

80.    More specifically, Plaintiff's and the Class Members' Medicare beneficiaries were also covered by no-fault, PIP, or medical payments policies issued by the Defendant.

81.    Because the Defendant is a primary payer, the Medicare payments for which Plaintiff seeks reimbursement were conditional payments under the MSP Law.

82.    Defendant was required to timely reimburse the Assignors for their conditional payments of the Enrollees' accident-related medical expenses. *See* 42 U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendant failed to do so.

83.    Plaintiff and the Class Members have suffered money damages as a direct result of Defendant's failure to reimburse the accident-related medical expenses.

84.    Defendant has derived substantial profits by placing the burden of financing

medical treatments for their policy holders upon the shoulders of Plaintiff's Assignors and the Class members.

85.     In this case, Defendant failed to administratively appeal the Assignors' rights to reimbursement within the administrative remedies period on a class wide basis. Defendant, therefore, is time-barred from challenging the propriety or amounts paid.

86.     Plaintiff, for itself and on behalf of the Class Members, brings this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendant for its failure to make appropriate and timely reimbursement of conditional payments for the Enrollees' accident-related medical expenses.

## JURY TRIAL DEMAND

87.     Plaintiff demands a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members described herein, prays for the following relief:

a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b.  designate Plaintiff as representative for the respective Class Members and Plaintiff's undersigned counsel as Class Counsel for the respective Class; and

c.  issue a judgment against Defendant that:

i.  grants Plaintiff and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

ii.  grants Plaintiff and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

      iii.     grants Plaintiff and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

DATED this 22nd day of June, 2020      Respectfully submitted,

*Attorneys for Plaintiff, MSP Recovery Claims Series, LLC*

*/s/ James L. Ferraro*
James L. Ferraro, Esq.
New York Bar No.: JF4002
Janpaul Portal, Esq.*
Florida Bar No.: 0567264
James L. Ferraro, Jr., Esq.
* Florida Bar No.: 107494
**THE FERRARO LAW FIRM, P.A.**
Brickell World Plaza
600 Brickell Avenue, 38th Floor
Miami, Florida 33131
Telephone (305) 375-0111
Facsimile (305) 379-6222
Email: jlf@ferrarolaw.com
       jpp@ferrarolaw.com
       jjr@ferrarolaw.com

**AND**

Francesco Zincone, Esq.*
Florida Bar No.: 100096
**ARMAS BERTRAN PIERI**
4960 S.W. 72nd Avenue, Suite 206
Miami, Florida 33155
Telephone: (305) 661-2021
Facsimile: (786) 221-2903
Email: fzincone@armaslaw.com

*\*Pro Hac Vice Admission to be sought*

# APPENDIX 1

## CMS' Standard for Storing Digital Health Insurance Claims Data

1.      It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

   a.   The 837 standard is mandated by the Federal government and used federal and state payors such as Medicare and Medicaid.

   b.   The 837 standard is also used by private insurers, hospital clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

   c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.      Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

   a.   Dates (including dates of service): the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

      i.   According to industry best practices and guidelines, and to HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two-digits for the month, DD representing two digits for the day of the month).

Sometimes this is alternately expressed as YYYYMMDD.[7]

    ii.   The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[8], 2011[9], 2012[10], 2013[11], 2014[12], and 2016.[13]

    iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data. *See* Local Coverage Determination ("LCD") Date of Service Criteria.[14]

---

[7] *See* the Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[8] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 761 dated August 20, 2010,                                                                     https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/r761otn.pdf.

[9] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 988 dated October 28, 2011, Business Requirements Table II, 7602.1 – Requirement, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[10] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1050 dated February 29, 2012,                                                                     https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[11] CMS Manual System, Pub 100-20 One-Time Notification Transmittal 1277
Medicare Physician Fee Schedule, dated August 9, 2013, https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[12] CMS Medicare Part D 2014 Guidance dated March 10, 2014, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[13] Medicare Plan Payment Group Enterprise Systems Solutions Group
Software Release Announcement, https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[14] CMS.gov. Local Coverage Determination (LCD) Date of Service Criteria. https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAAA.

    iv.    The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v.    In general, ensuring the accuracy of dates, and other data is essential to performing analysis on claims data files by health insurers, and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

    b.    <u>Medical Diagnosis and Procedure Codes</u>:

    i.    Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital resources necessary to treat the condition.[15][16]

---

[15] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[16] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs." Specifically, beginning in October 2007, CMS began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, sex, and discharge status of the patient. The diagnosis and discharge information is reported by the hospital using codes from the ICD-9-CM or ICD-10 CM if the date of services is on or after October 1, 2015.

   ii.  International Classification of Diseases (ICD-9 and ICD-10) The diagnosis information is reported by the hospital using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of services is before October 1, 2015), or ICD-10 CM if the date of services is on or after October 1, 2015

  iii.  Inpatient medical procedures ICD-9 Volume 2 and volume 3 and ICD-10 PCS. These codes are used to describe inpatient medical procedures, excluding the physician's bill.

  iv.  Current Procedural Terminology ("CPT") - CPT[17] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4 is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[18]

  v.  Ambulatory Patient Classification (APC) - Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and

---

[17] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[18] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

similar costs.[19]

    vi.   Healthcare Common Procedure Coding System (HCPCS) - HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[20]

    vii.   The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. 162.1002 - Medical data code sets.

    viii.   The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

Specifically, CMS primarily utilizes two systems of classification: (1) the International Classification of Diseases ("ICD-9") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. 162.1002.

---

[19] CMS, Hospital Outpatient Prospective Payment System, Partial Hospitalization services furnished by hospitals or Community Mental Health Centers, Ambulatory Payment System, https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[20] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

## APPENDIX 2

1.      On March 20, 2018 Health Insurance Plan of Greater New York ("EHTH") irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to Series 16-08-483, a designated series of Plaintiff and to MSP Recovery, LLC, a Florida Limited Liability Company (the "EHTH Assignment"). The EHTH Assignment is attached hereto as **Exhibit D**, and expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising or relating to the Assigned Medicare Recovery Claims, including claims under consumer statutes and laws, and all information relating thereto, as may be applicable.

> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

**Ex. D**.

3.      The "Medicare Recovery Claims" assigned to Plaintiff include EHTH's "legal and equitable rights to seek reimbursement and/or recovery from primary payers . . . responsible to [EHTH] directly or through rights conferred on [EHTH] pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to [HIPGNY's] Medicare (as defined above) Enrollees arising under state and/or federal laws, including common law subrogation theories, that provide for the reimbursement of payments made by [EHTH] . . . pursuant to a Medicare Advantage Plan . . . ." *Id.* at p.1.

4.      The "Assigned Medicare Recovery Claims" included the above-referenced Medicare Recovery Claims, but excluded "Medicare Recovery Claims that [could] be asserted against Assignor's members, Enrollees and/or contracted providers" and Medicare Recovery

Claims that as of March 20, 2018 (the Effective Date of the agreement) had been assigned to and/or were being pursued "by other recovery vendors, including, but not limited to, The Rawlings Group" for services rendered within a defined six-year time period. *Id.* at p.1. These excluded claims are defined in the EHTH Assignment as "Assignor Retained Claims." *Id.*, § 2(a).

5.      With the exception of the Assignor Retained Claims, the EHTH Assignment expressly provides that:

> Assignor hereby irrevocably assigns. transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising or relating to the Assigned Medicare Recovery Claims, including claims under consumer statutes and laws, and all information relating thereto, as may be applicable…

> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

*Id.*, § 2(b).

6.      The Assigned Medicare Recovery Claims include the right to pursue and recover payments made by EHTH on behalf of the Enrollees attached hereto in **Ex. A**, including the A.B. claim.

7.      To confirm that Enrollees were not one of the Assignor Retained Claims, Plaintiff reviewed all carve-out lists provided by EHTH with their claims data. The carve-out lists were provided by EHTH to identify the Assignor Retained Claims (i.e., the specific claims of Enrollees excluded from being pursued by Plaintiff). The enrolles' claims are not included on EHTH's carve-out lists. Further, in an abudance of caution, Plaintiff confirmed with EHTH that the exemplar claims identified herein were not and/or are not being pursued by any subrogation vendors. Therefore, the Enrollees' claims are not an Assignor Retained Claim under the EHTH Assignment.

8.      On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the EHTH Assignment to Series 16-08-483, a designated series of Plaintiff ("Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 16-08-483, which was ratified and approved by EHTH,[21] is attached hereto as **Exhibit E** and states:

> . . . MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee, Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC, a Delaware Series Limited Liability Company, and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Assigned Claims", "Claims", "Assigned Assets", "Assigned Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement.

**Ex. E**.

---

[21] EHTH expressly ratified and approved the Series Assignment by letter dated September 25, 2018, a copy of which is attached hereto as **Exhibit F**.