UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MSP RECOVERY CLAIMS, SERIES LLC,

                                        Plaintiff,

        – against –

HEREFORD INSURANCE COMPANY,

                                        Defendant.

**OPINION & ORDER**

20 Civ. 4776 (ER)

RAMOS, D.J.:

MSP Recovery Claims, Series LLC ("MSP") brings this putative class action against Hereford Insurance Company ("Hereford"). MSP alleges that Hereford systematically failed to honor its primary payer obligations under the Medicare Secondary Payer Act (the "Act"), 42 U.S.C. § 1395y, by not paying for or reimbursing medical expenses resulting from injuries sustained in automobile and other accidents that should have been paid by Hereford but, instead, were paid by Medicare or Medicare Advantage Organizations ("MAOs"). First Amended Complaint ("FAC"), Doc. 26, at ¶ 1.

MSP brings this class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all class members or their assignees who paid for accident-related medical expenses, when Hereford was statutorily required to do so as the primary payer and failed to do so.[1] *Id.* at ¶¶ 69–70; *see also id.* at ¶¶ 69–76. MSP asserts a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) to recover double damages from Hereford for its failure to make or reimburse these payments. *Id.* at ¶ 91.

---

[1] MSP defines the putative class in the First Amended Complaint. *See* First Amended Complaint ("FAC"), Doc. 26, at ¶ 77.

This case is one of a series of lawsuits brought by Plaintiff or its affiliated entities against various insurance companies, alleging that they have incurred costs that are reimbursable pursuant to the Act.  Such cases in this district have routinely been dismissed for lack of standing.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, No. 20 Civ. 2102 (VEC), 2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021), *reconsideration denied*, No. 20 Civ. 2102 (VEC), 2021 WL 3371621 (S.D.N.Y. Aug. 2, 2021); *MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, No. 18 Civ. 8036 (AT), 2020 WL 91540 (S.D.N.Y. Jan. 8, 2020); *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 19 Civ. 211 (MAD) (TWD), 2019 WL 4222654 (N.D.N.Y. Sept. 5, 2019).

On May 28, 2021, Hereford filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6).  *See* Motion to Dismiss FAC, Doc. 37;[2] *see also* Memorandum of Law in support of Motion to Dismiss FAC ("Mot."), Doc. 36.

Because MSP has not adequately alleged that it has standing, the Court lacks subject matter jurisdiction.  Accordingly, Hereford's motion to dismiss is GRANTED. Without subject matter jurisdiction, the Court declines to consider Hereford's remaining arguments.

---

[2] On May 28, 2021, Hereford filed its motion to dismiss the FAC, which resulted in a deficient docket entry due to a filing error.  Doc. 34.  On June 3, Hereford re-filed its motion to dismiss.  Motion to Dismiss FAC, Doc. 37.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Factual Background

Pursuant to the Act, Medicare is prohibited from paying for "any item or service" if "payment has been made, or can reasonably be expected to be made" by a "primary plan." 42 U.S.C. § 1395y(b)(2)(A).  Primary plans include group health plans, workers' compensation, automobile or liability insurance, and no-fault insurance.  *See id.* However, when the primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service," Medicare can make the payment.  42 U.S.C. § 1395y(b)(2)(B)(i).  In such instances, the primary plan "shall reimburse" Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."  42 U.S.C. § 1395y(b)(2)(B)(ii).  The Act includes a private cause of action that provides for the recovery of double damages when a primary plan fails to make these required payments.  42 U.S.C. § 1395y(b)(3)(A).

"Under this statutory scheme, primary plans are also required to pay [MAOs], which are private insurers with whom Medicare sub-contracts to provide services to Medicare patients."  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *1 (citing *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1316–17 (11th Cir. 2019) (describing the history of the Act and MAOs); 42 U.S.C. § 1395w-22(a)(4) (applying the primary plan payment requirement to MAOs)), *reconsideration denied*, 2021 WL 3371621.  While MSP itself is not an MAO, MSP's assignors are MAOs.  FAC at ¶ 3.

MSP alleges that Hereford is an insurer that provides no-fault or med-pay insurance to its customers, including Medicare beneficiaries.  *Id.* at ¶ 2.  With respect to accidents involving Medicare beneficiaries, MSP alleges that Hereford is a primary plan

under the Act, meaning that its obligation to pay for accident-related medical expenses is primary, while Medicare's obligation is secondary. *Id.* (citing 42 U.S.C. § 1395y(b)(2)(A); 42 C.F.R. § 411.21).

MSP alleges that the purpose of the Act is to ensure that Medicare and the MAOs do not pay for accident-related medical expenses that should be paid by primary payers, such as Hereford. *Id.* at ¶ 4. MSP argues that primary payers like Hereford deliberately and systematically avoid paying for or reimbursing these expenses pursuant to their obligations under the Act, thereby passing them on to Medicare and the MAOs. *Id.* at ¶ 7. MSP further alleges that the private cause of action established under the Act ensures that Medicare and the MAOs have a mechanism to guarantee that primary payers will pay for or reimburse these expenses. *Id.* at ¶¶ 4, 8. MSP contends that pursuant to federal regulations promulgated under the Act, primary payers are also affirmatively required to identify whether their insured enrollees are Medicare beneficiaries and report their primary payer responsibility to the Centers for Medicare and Medicaid Services ("CMS"). *Id.* at ¶ 5. These requirements are meant to ease the overwhelming burden and expenses borne by Medicare and the MAOs. *Id.* at ¶ 6.

MSP brings this action seeking double damages for Hereford's purported failure to properly pay for or reimburse conditional payments made by MAOs or their assignees on behalf of Medicare beneficiaries that it was allegedly required to pay for under a no-fault insurance policy. *Id.* at ¶¶ 12–14. In connection with Hereford's alleged failure to make required payments, MSP alleges that Hereford deliberately failed to comply with its reporting requirements under the Act and refused to coordinate benefits with the MAOs, including MSP. *Id.* at ¶ 17.

The MAOs assigned their recovery and reimbursement rights to MSP's Series LLCs. *Id.* at ¶ 38. In turn, MSP possesses the right to sue on behalf of each of its designated Series LLCs.[3] *Id.*; *see also* Second Amendment to the Limited Liability Company Operating Agreement of MSP Recovery Claims, Series LLC (FAC Ex. B), Doc. 26-2, at 1 ("For avoidance of doubt, [MSP] is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series."). Thus, MSP brings this action on behalf of its Series LLCs, which were purportedly assigned certain recovery rights by MAOs. *See* FAC at ¶¶ 35, 36, 38–40.

To identify conditional payments made by MSP's assignors for which Hereford was responsible, MSP utilized "a proprietary system that matches the health care claims data from its Assignors to the publicly available reporting data from CMS and police crash reports available in limited jurisdictions, as well as the claims data made available by primary payers like [Hereford]." *Id.* at ¶ 9; *see id.* at ¶¶ 20–24. Specifically, MSP used certain medical diagnosis and procedure codes to identify information regarding an enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier was a liability provider. *Id.* at ¶ 21. Through a data matching process using the digital health insurance claims data from MSP's assignors and Hereford, MSP's system also determined the amounts owed. *Id.* at ¶ 23.

---

[3] MSP established its Series LLCs "pursuant to Title 6, § 18-215 of the Delaware Code to serve as units of the Company." Second Amendment to the Limited Liability Company Operating Agreement of MSP Recovery Claims, Series LLC (FAC Ex. B), Doc. 26-2, at 1; *see also* DEL. CODE ANN. tit. 6, § 18-215(a) (West 2019) ("A limited liability company agreement may establish or provide for the establishment of 1 or more designated series of members, managers, limited liability company interests or assets."). Each Series LLC is owned by and forms a part of MSP. FAC Ex. B at 2.

MSP alleges that in using its system, it has identified "multiple instances in which Plaintiff's Assignors made conditional payments for accident-related medical expenses which should have been [made] by [Hereford]."  *Id.* at ¶ 24.  MSP further alleges that it has identified "numerous instances where [Hereford] admitted, by reporting to CMS, that it was contractually obligated (pursuant to no-fault insurance policies) to provide primary payment."  *Id.* at ¶ 25.  These instances are listed in Exhibit A to the FAC, which is a two-page spreadsheet allegedly identifying the Medicare beneficiaries for whom MSP's assignor and an MAO, Health Insurance Plan of Greater New York, an EmblemHealth company ("EmblemHealth"), "made conditional payments for accident-related treatments subject to overlapping primary coverage from [Hereford], which payments have not been reimbursed."  *Id.*; *see also* FAC Ex. A, Doc. 26-1.  MSP's system also purportedly identified other instances in which its assignors made conditional payments on behalf of enrollees for which the primary payer could not be identified, because either (1) the primary payer failed to report its responsibility as required by the Act or (2) police crash reports that would identify the proper primary payer were not available to MSP in the jurisdiction in which the accident occurred.  FAC at ¶ 26.

MSP sets forth two representative "exemplars" of claims which Hereford should have paid its assignors but failed to do so.  *Id.* at ¶ 46.  Specifically, EmblemHealth allegedly made conditional payments on behalf of two patients, N.G. and A.B.,[4] for accident-related medical expenses.  *Id.*  Although Hereford reported its primary payer

---

[4] In its opposition, MSP gives notice that it will not proceed with its A.B. claim, and will instead rely solely on its N.G. claim.  Memorandum of Law in opposition to Motion to Dismiss FAC ("Opp."), Doc. 39, at 8 n.4.  Therefore, for the purposes of this motion to dismiss with respect to the exemplar claims, the Court considers the N.G. claim only.

responsibility for the expenses, it allegedly failed to reimburse EmblemHealth for these conditional payments. *Id.*

MSP alleges that N.G. sustained injuries in an accident on October 14, 2014, which required medical services, and that N.G. was enrolled in an MAO plan issued by EmblemHealth. *Id.* at ¶¶ 47–48. In addition, N.G. was a Medicare beneficiary whose accident-related medical expenses were covered pursuant to a no-fault policy issued by Hereford. *Id.* at ¶¶ 49–50, 53; *see also* FAC Ex. C (N.G.'s diagnosis codes and injuries in connection with N.G.'s accident), Doc. 26-3. MSP further alleges that after medical services were provided, the medical providers billed EmblemHealth for N.G.'s medical expenses, of which EmblemHealth paid a portion. FAC at ¶¶ 51–52. In connection with N.G.'s accident-related medical expenses, Hereford allegedly reported information regarding the accident to CMS, including its primary payer responsibility under "Hereford Insurance Company" and the type of insurance policy involved. *Id.* at ¶ 54. MSP contends that this exemplar illustrates Hereford's failures to fulfill its statutory duties as a no-fault insurer. *Id.* at ¶ 46; *see also id.* at ¶ 55. MSP further alleges that EmblemHealth assigned the claims associated with this patient to one of MSP's Series LLCs. *Id.* at ¶¶ 38 n.4, 40.

MSP argues that it has standing to assert claims for double damages for Hereford's alleged failure to reimburse conditional payments made by MSP's assignors on a class-wide basis, including the claims associated with N.G. and the claims listed in Exhibit A. *Id.* at ¶ 27.

As further discussed below, Hereford acknowledges that N.G. was in an accident on October 14, 2014, and that it paid for certain medical treatment received by N.G.

related to that accident.  However, Hereford argues that no claim for payment was submitted for the medical services at the center of MSP's allegations.  At issue is whether MSP has adequately alleged that these other medical services were sufficiently connected to the same accident.

### B.     Procedural History

MSP filed the complaint on June 22, 2020.  Doc. 1.  On February 18, 2021, Hereford moved to dismiss the complaint.  Doc. 16.  On March 19, MSP filed the FAC. FAC.  On May 28, Hereford filed its motion to dismiss the FAC pursuant to Rules 12(b)(1) and 12(b)(6), in which it argues that MSP has failed to allege the specific and particularized facts required to establish standing for jurisdiction or a sustainable claim. Mot. at 1.  Specifically, Hereford contends that MSP's two exemplars and its data system do not demonstrate any injury-in-fact to MSP, nor do they establish any wrongdoing or payment obligation on the part of Hereford.  *Id.*  Hereford further argues that MSP, as an assignee of an MAO, does not have a right to a private cause of action, thereby lacking standing.  *Id.*

## II.    LEGAL STANDARD

### A.     Rule 12(b)(1)

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1); *see also Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).  "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Sharkey v. Quarantillo*, 541

F.3d 75, 82 (2d Cir. 2008)).  When deciding a motion to dismiss under Rule 12(b)(1) at

the pleadings stage, the court "must accept as true all material facts alleged in the

complaint and draw all reasonable inferences in the plaintiff's favor." *Id.* (internal

quotation marks omitted) (quoting *Sharkey*, 541 F.3d at 83).  "However, argumentative

inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut.

Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *see also

Conyers*, 558 F.3d at 143 ("[E]ven on a motion to dismiss, courts are not bound to accept

as true a legal conclusion couched as a factual allegation." (internal quotation marks

omitted)).

Courts recognize two types of Rule 12(b)(1) motions:  facial and factual.  *AIG

Prop. Cas. Co.*, 2021 WL 1164091, at *3, *reconsideration denied*, 2021 WL 3371621.

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the

complaint or the complaint and exhibits attached to it . . . the plaintiff has no evidentiary

burden.  The task of the district court is to determine whether the [p]leading alleges facts

that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.*

(quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)).  "On the

other hand, when the challenge is fact-based, defendants may proffer evidence beyond the

[p]leading, and the plaintiff may come forward with its own evidence to controvert that

evidence." *Id.* (citing *Carter*, 822 F.3d at 57).  The court may consider evidence outside

of the pleadings, such as affidavits, to resolve the disputed jurisdictional fact issues.

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000);

*see also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)), *aff'd*, 561 U.S. 247 (2010).

"[T]he district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

### B.    Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the Court is not obliged to reconcile and accept as true "pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference . . . ." *Xin Wei Lin v. Chinese Staff & Workers' Ass'n*, No. 11 Civ. 3944 (RJS), 2012 WL 5457493, at *4 (S.D.N.Y. Nov. 8, 2012) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)), *aff'd*, 527 F. App'x 83 (2d Cir. 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.  If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, and moves to dismiss on other grounds, the Court must generally consider the Rule 12(b)(1) motion first." *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *3 (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)), *reconsideration denied*, 2021 WL 3371621.

## III.   DISCUSSION

### A.   Legal Standard

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).  "[I]n order to have Article III standing, a plaintiff must adequately establish:  (1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Id.* at 273–74 (internal quotation marks and alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

If a party lacks Article III standing, a court has no subject matter jurisdiction to hear its claims. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*

*Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  Thus, the question of standing must be resolved prior to deciding a case on the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

**B.     MSP's Article III Standing Over N.G.'s Claim**

**i.     MSP Has Not Adequately Pled Injury**

To satisfy the first element of standing, MSP must suffer an injury-in-fact.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  To be "particularized," the injury "must affect the plaintiff in a personal and individual way."  *Id.* at 560 n.1.  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice."  *Id.* at 561.  Although the injury must be "clearly alleg[ed]," which is "lower" than the threshold for supporting a cause of action, *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018), "[n]evertheless, the factual allegations must be sufficient to put injury-in-fact into the realm of the plausible."  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *4, *reconsideration denied*, 2021 WL 3371621.

With respect to the exemplar claim for N.G., MSP describes its injury-in-fact as the economic damages MSP and its assignor EmblemHealth sustained as a direct result of Hereford's alleged failure to pay for or reimburse accident-related medical expenses paid on behalf of N.G.  FAC at ¶¶ 10, 14, 19, 24, 41, 88.  In order to adequately plead injury-in-fact, MSP must show that the injury was "particularized" or, in other words, that it was affected "in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  MSP alleges

that EmblemHealth assigned the claims associated with N.G. to one of its Series LLCs. FAC at ¶¶ 38 n.4, 40, 68.  Furthermore, MSP contends that, pursuant to its Limited Liability Company Operating Agreement, it has the right to bring a lawsuit on behalf of each of its Series LLCs.  *Id.* at ¶¶ 38, 68.

Accordingly, to establish the injury-in-fact element with respect to the exemplar claim, MSP must make adequate factual allegations to support a finding that (1) the MAO incurred medical expenses as a result of an accident suffered by N.G.; (2) the MAO paid, but was not reimbursed, for those expenses; (3) the MAO assigned its claim for reimbursement to one of MSP's Series LLCs; and (4) MSP has the right to sue on behalf of the designated Series LLC that received the assignment.  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *4 n.4 (collecting cases brought by the same plaintiff, MSP, or its affiliated entities against different insurance companies where courts similarly described injury), *reconsideration denied*, 2021 WL 3371621.  The Court will consider each of the four prongs.

*First*, MSP has adequately alleged that EmblemHealth incurred medical expenses resulting from an accident suffered by N.G.  MSP alleges that N.G. was injured in an accident, and sustained injuries that required medical services as a direct and proximate result thereof.  FAC at ¶ 48.  In support of these allegations, MSP attached a spreadsheet as an exhibit to the FAC, which allegedly lists the diagnosis codes and injuries in connection with the accident-related treatment for N.G.  *See id.* at ¶ 50; *see also* FAC Ex. C.  The spreadsheet also includes the dates on which medical services were rendered as well as the dates on which EmblemHealth allegedly paid for the services.  FAC Ex. C.  It appears that the information in this exhibit about N.G. derives from MSP's data system.

FAC at ¶¶ 9, 20–24; *see also* Memorandum of Law in opposition to Motion to Dismiss FAC ("Opp."), Doc. 39, at 6, 8.

While the spreadsheet does not contain the name of the patient who received medical services, it does contain a column for member ID numbers, which could link the data to N.G.  FAC Ex. C.  However, the spreadsheet arguably does not conclusively show that EmblemHealth paid for the services, although it does contain columns for the client and member ID numbers, which reference EmblemHealth.  *Id.*  In addition, although MSP alleges that EmblemHealth was billed $9,085.15 and paid $2,694.15 in connection with N.G.'s medical services, there are discrepancies between the amounts alleged in the FAC and amounts billed and paid as reflected in the spreadsheet.  *Compare* FAC at ¶ 52 and Opp. at 9 *with* FAC Ex. C (the entries in the amount billed and amount paid columns equal $9,079 and $2,693.05, respectively).

Courts have previously addressed discrepancies of this nature with MSP's data compilation and analytic process in similar cases against different insurers.  *See, e.g.*, *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *5–6, *reconsideration denied*, 2021 WL 3371621; *New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *5 (finding that "nothing on the actual exhibit confirms its source").

Notwithstanding these discrepancies, the Court finds that MSP has adequately alleged that EmblemHealth paid for medical services provided to N.G.  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *5–6 (finding that the same plaintiff barely adequately alleged that MAOs paid for medical care for exemplar patients despite "lack of identifying information," "blunders," and "discrepancies"), *reconsideration denied*, 2021 WL 3371621.

*Second*, MSP must allege that the MAO paid for medical services and was not reimbursed by Hereford.  *Id.* at *6.  MSP contends that the expenses at issue are reimbursable, as evidenced by Hereford's reporting the accident to CMS, which purportedly "demonstrates that [Hereford] was aware of the accident and its responsibility to reimburse [EmblemHealth]."  FAC at ¶¶ 54–55; *see also id.* at ¶¶ 25, 46 ("[Hereford] reported and admitted its primary payer responsibility for the accident-related medical expenses but has nevertheless failed to reimburse Plaintiff or its Assignor for the conditional payments"); Opp. at 9, 12.  As background, MSP alleges that primary payers like Hereford are legally required to report their primary payer responsibility to CMS, and that this reporting constitutes an "admission that it should have paid for [the] accident-related injuries in the first instance."  FAC at ¶¶ 5–6, 55; *see also* Opp. at 5, 21–22.

However, as Hereford argues, MSP's "false presumption" that an insurer's statutorily required notice to CMS that a Medicare beneficiary made a no-fault claim constitutes an "admission" of primary payer status and liability is a mischaracterization.  Mot. at 1, 7, 9, 13, 14, 16; *see also* Reply Memorandum of Law in support of Motion to Dismiss FAC, Doc. 41, at 1–2.  "Plaintiff's underlying premise — if a claim is reported to CMS, then any medical expense that may be associated with the claim is reimbursable by the entity that reported the claim — is factually inaccurate."  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *6, *reconsideration denied*, 2021 WL 3371621.  "Anytime an insurance company becomes aware that a Medicare beneficiary was injured in an accident for which it (or a direct subsidiary) wrote a policy that may provide coverage, the insurance company is obligated to report it to CMS."  *Id.*  "Insurance companies are required to

submit such claim information 'regardless of whether or not there is a determination or admission of liability.'"  *Id.* (quoting 42 U.S.C. § 1395y(b)(8)(C)); *see also* Mot. at 7 ("The notice is required under 42 U.S.C. § 1395y(b)(8) whether or not the no-fault claim is resolved (determined valid or invalid) and cannot be deemed an admission."), 14–15. Furthermore, Hereford presents a hypothetical scenario in which multiple insurers would be statutorily required to report the same claim to CMS, but the medical services and items associated with the claim would not be reimbursable by each and every insurer as a primary payer.[5]  *See* Mot. at 15.  Although MSP argues that the statutory text and Eleventh Circuit case law support its contention that reporting to CMS is an admission of primary payer responsibility,[6] Opp. at 20–22, "the Court needs to know whether CMS data plausibly suggests that reported claims generate medical expenses that are reimbursable to the MAOs by the reporting entity."[7]  *AIG Prop. Cas. Co.*, 2021 WL

---

[5] Hereford argues that the mischaracterization of the 42 U.S.C. § 1395y(b)(8) notification requirement as an admission is further highlighted by the fact that the A.B. exemplar claim is not covered by Hereford's insurance policy despite Hereford's notification to CMS regarding a potential claim.  Memorandum of Law in support of Motion to Dismiss FAC ("Mot."), Doc. 36, at 9–10.  MSP does not respond to this allegation, but gives notice that it will not proceed with its A.B. claim.  Opp. at 8 n.4; *see also* Reply Memorandum of Law in support of Motion to Dismiss FAC, Doc. 41, at 1, 2–3.

[6] In the district court's opinion denying MSP's motion for reconsideration in *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, the court did not consider the plaintiff's statutory and regulatory arguments in support of its position regarding the significance of CMS reporting, but held that the plaintiff's reliance on two Eleventh Circuit cases, *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305 (11th Cir. 2020) and *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764 (11th Cir. 2020), to support its view that reporting to CMS constitutes an admission that the reporting company is responsible as a primary payer was inapplicable and not persuasive.  No. 20 Civ. 2102 (VEC), 2021 WL 3371621, at *3–4 (S.D.N.Y. Aug. 2, 2021).  Here, MSP makes substantially similar arguments.  *See, e.g.*, Opp. at 4, 5, 20–22. The Court finds the reasoning in *AIG Prop. Cas. Co.* persuasive.

[7] As the district court observed in *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, where MSP did not argue that CMS data reflects some claims that are likely reimbursable, but instead argued only that an insurer's report to CMS constitutes an admission that it is the primary payer, "the Court has nothing on which to base a decision that it can draw reasonable inferences from the bare fact that the claim was reported."  No. 20 Civ. 2102 (VEC), 2021 WL 1164091, at *7 n.13 (S.D.N.Y. Mar. 26, 2021), *reconsideration denied*, 2021 WL 3371621.  The parties also dispute the circumstances surrounding and the implications of Hereford's handling of the N.G. claim, including Hereford's payment of other claims submitted for N.G.  *See* Mot. at 10–12; Affidavit of Samuel Rubin in support of Motion to Dismiss FAC ("Rubin Affidavit"), Doc. 38, at ¶¶ 13–14, 19; Opp. at 8–13.  Nonetheless, MSP repeats its argument, without factual support as to whether the claims at issue were, in fact, reimbursable, that Hereford was

1164091, at *7 ("Without any information from Plaintiff about what can be discerned from CMS data, the Court is at a loss whether this information supports Plaintiff's premise that the exemplar claims involve costs that should have been reimbursed to the MAOs."), *reconsideration denied*, 2021 WL 3371621.

In summary, MSP has not adequately alleged that there is "more than a sheer possibility" that its exemplar claim reported to CMS involves an accident where an insurance company is the primary payer and is therefore required to reimburse the MAO. *Id.* (quoting *Iqbal*, 556 U.S. at 678). Therefore, without factual support for the proposition that the medical expenses incurred by the patients involved in accidents that were reported to CMS should have been reimbursed, "Plaintiff is left with nothing more than speculation that the MAOs at issue lost money." *Id.* Accordingly, MSP fails to adequately plead injury-in-fact, as it has not adequately alleged that EmblemHealth incurred reimbursable costs in connection with the N.G. claim. Although this finding alone warrants dismissal of the FAC for lack of standing, the Court further considers MSP's standing allegations. *See id.*

*Third*, MSP must allege that EmblemHealth assigned the exemplar claim to one of its Series LLCs. *Id.* MSP alleges that EmblemHealth assigned its claims related to N.G. to its Series LLC. FAC at ¶¶ 38, 40. An "assignee of a claim has standing to assert the injury in fact suffered by the assignor," *Vt. Agency of Nat. Res. v. United States ex rel.*

---

"undoubtedly a primary payer for the items and services paid by [EmblemHealth], where Hereford: had notice of the accident, admitted and reported to CMS, and made payments for other claims submitted on behalf of N.G." Opp. at 9. The Court notes that while the Rubin Affidavit acknowledges that Hereford began paying for medical treatment received by N.G. on account of the accident, this payment was related to a no-fault application for N.G. submitted on November 13, 2014, and "no claim for payment was submitted to Hereford for medical treatment on October 14 through October 18, 2014." Rubin Affidavit at ¶¶ 13–14 (noting that the first date of treatment known to Hereford was October 20, 2014); *see also* Rubin Affidavit Ex. G, Doc. 38-7 (no-fault application submitted on behalf of N.G. related to medical services arising from an automobile accident on October 14, 2014).

*Stevens*, 529 U.S. 765, 773 (2000), and the assignee "replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy."  *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002).

On March 20, 2018, EmblemHealth assigned "all rights to recover conditional payments made on behalf of its Enrollees" to MSP's Series 16-08-483 and MSP Recovery, LLC.  FAC Appendix 2 at ¶ 1; *see* FAC Ex. E, Doc. 26-5, at 2 ("Assignor hereby irrevocably assigns . . . to Assignee . . . any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims . . . .")[8].  On April 4, MSP Recovery, LLC assigned "the rights it had acquired in the [assignment from EmblemHealth] to Series 16-08-483."  FAC Appendix 2 at ¶ 7; *see* FAC Ex. F, Doc. 26-6, at 1.  On September 25, EmblemHealth expressly ratified and approved this assignment. FAC Appendix 2 at ¶ 7 n.20; *see* FAC Ex. G, Doc. 26-7.

MSP alleges that it "holds assigned rights to reimbursement, including those recoverable pursuant to the [Act], through assignments" from MAOs.  Opp. at 3; *see* FAC at ¶¶ 40, 66, 68.  MSP further alleges that the claims identified in Exhibit A as well as the N.G. claim (1) derived from Medicare Health Care Services that were rendered and paid for by EmblemHealth during the six-year period beginning September 29, 2011 and ending September 29, 2017, (2) had not been assigned to and were not being pursued by

---

[8] The "Assigned Medicare Recovery Claims" include EmblemHealth's rights to seek reimbursement from primary payers responsible to EmblemHealth "for Health Care Services provided to [EmblemHealth's] Medicare [ ] enrollees arising under state and/or federal laws . . . that provide for the reimbursement of payments made by [EmblemHealth] . . . pursuant to a Medicare Advantage Plan."  FAC Appendix 2 at ¶¶ 2–3; *see* FAC Ex. E, Doc. 26-5, at 1, § 2(a) (defining excluded claims as "Assignor Retained Claims").  The "Assigned Medicare Recovery Claims" relate to "Medicare Health Care Services" that were rendered and paid for by EmblemHealth during the six-year period beginning September 29, 2011 and ending September 29, 2017.  FAC Ex. E at 1.

other recovery vendors as of March 20, 2018, and (3) are not claims that can be asserted

against EmblemHealth's members, enrollees and/or contracted providers.  FAC Appendix

2 at ¶ 4; *see* FAC Ex. E at 1, § 2(a).

MSP provides data purporting to show that medical services were provided to

N.G. between October 14 and October 18, 2014, and that the associated expenses were

paid by EmblemHealth between October 24 and November 21, 2014.  FAC Ex. C; *see*

*also* FAC at ¶ 51; Opp. at 9.  Therefore, these medical services were rendered to N.G. and

paid for by EmblemHealth during the period covered by the assignment agreement.  *See*

FAC Ex. E at 1.

MSP alleges that the exemplar claims, including the N.G. claim, "are not subject

to any carveouts, exclusions, or any other limitations in law or equity that would impair

Plaintiff's right to bring this cause of action."  FAC at ¶ 40; *see* FAC Ex. E at 1.  In

support of this allegation, MSP asserts that it "reviewed all carve-out lists provided by

[EmblemHealth] with their claims data," and confirmed that the Exhibit A claims, as well

as the N.G. claim, were "*not* included on [EmblemHealth's] carve-out lists and [were] *not*

Assignor Retained Claims."  FAC Appendix 2 at ¶ 6 (emphases in original).  Given that

the Court must draw reasonable inferences in MSP's favor, the Court finds that the N.G.

claim was not excluded from the assignment agreement.  *See AIG Prop. Cas. Co.*, 2021

WL 1164091, at *9 (concluding that exemplar claims were not excluded from

assignments where the same plaintiff's data analyst reviewed carve-out lists),

*reconsideration denied*, 2021 WL 3371621.

*Fourth*, MSP must allege that it has the right to sue on behalf of its Series LLC to

which the N.G. claim was assigned.  *Id.* at *10.  MSP alleges that it "maintains the legal

right to sue on behalf of each of its designated series LLCs," as "all rights arising from the assignment to its series, along with the right to bring any lawsuit in connection with said assignment, belong to Plaintiff." FAC at ¶ 38 (citing FAC Ex. B at 1).

In *AIG Prop. Cas. Co.*, an action initiated by MSP against other insurance companies involving similar claims, the court assessed the parties' arguments as to whether MSP's own LLC agreement could authorize it to sue on behalf of its designated Series LLCs pursuant to Delaware law. 2021 WL 1164091, at *10–11, *reconsideration denied*, 2021 WL 3371621. While the court had "grave doubts" about the merits of MSP's argument, it declined to make any findings on the matter in light of MSP's failure to allege standing for other distinct reasons and the split of federal court authority over the Delaware law issue. *Id.* at *11. While the parties do not raise this issue here, the Court adopts the court's approach in *AIG Prop. Cas. Co.*, and for the purposes of this motion only, similarly assumes that MSP has the right to sue on behalf of its designated Series LLC. *Id.*

### ii.    MSP Has Not Adequately Pled Causation

In order to establish Article III standing, an alleged injury must be "fairly traceable" to the defendant. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). Therefore, MSP must allege facts adequate to show that the alleged injury resulted from the actions of the defendant and "not . . . from the independent action of some third party." *See MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 44 (2d Cir. 2017) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 663 (1993)), *as amended* (Aug. 2, 2017). MSP has failed to adequately plead causation.

*First*, MSP has adequately pled that EmblemHealth's injury is traceable to Hereford. *AIG Prop. Cas. Co.*, 2021 WL 1164091, at \*11, *reconsideration denied*, 2021 WL 3371621. MSP alleges that N.G.'s medical costs were covered by a no-fault insurance policy issued by Hereford. FAC at ¶ 49. Hereford does not challenge this allegation. In fact, Hereford paid for certain of N.G.'s medical treatments, and was "responsible for paying medical bills incurred by [N.G.]." Affidavit of Samuel Rubin in support of Motion to Dismiss FAC ("Rubin Affidavit"), Doc. 38, at ¶¶ 13–14, 19; *see also* Mot. at 10–11. Therefore, the Court finds that MSP has adequately pled that Hereford issued the insurance policy at issue in the N.G. claim.

*Second*, MSP has not adequately alleged that the medical services provided to N.G. were for injuries that would have been covered by the insurance policy issued by Hereford. *AIG Prop. Cas. Co.*, 2021 WL 1164091, at \*12, *reconsideration denied*, 2021 WL 3371621. N.G. was injured in an accident on October 14, 2014, and as a result thereof, required medical services. FAC at ¶ 48. Hereford acknowledges that N.G. was in an accident on October 14, 2014, and that it made payments for medical treatment received by N.G. on account of the accident. Rubin Affidavit at ¶ 13; *see also* Rubin Affidavit Ex. G, Doc. 38-7 (no-fault application submitted on behalf of N.G. related to medical services arising from an automobile accident on October 14, 2014). However, Hereford argues that the payments it made were related to the medical services rendered in connection with the accident, with the first date of treatment on October 20, 2014. Rubin Affidavit at ¶¶ 13–14.[9] Hereford further contends that "no claim for payment was

---

[9] The no-fault application submitted to Hereford on behalf of N.G. notes that N.G. was involved in an "automobile accident." Rubin Affidavit Ex. G at 2.

submitted to Hereford for medical treatment on October 14 through October 18, 2014," which is the treatment at issue.  *Id.* at ¶ 14; *see also* Rubin Affidavit Ex. G.  Moreover, MSP has not adequately alleged that the medical services at issue were related to or necessitated by the same accident.

In support of its allegations, MSP attaches as Exhibit C to the FAC "[a] list of N.G.'s diagnosis codes and injuries in connection with N.G.'s accident-related treatment."  FAC at ¶ 50; *see also* FAC Ex. C.  However, MSP does not make allegations regarding, for example, the nature and details of the accident that allegedly required medical services or the nature and details of medical care provided.[10]  "Without at least some allegations about the nature of the accident[ ], there is nothing beyond Plaintiff's *ipse dixit* and the fact that the medical care was provided on the date of or subsequent to the date of the accident that links the alleged insurance policies . . . to the medical items and services provided."  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *12 (noting "the fallacy of relying only on chronology to assert that an automobile insurance company is a primary payer" and finding that the same plaintiff had not adequately pled causation where it presented similar allegations and exhibits, *id.* at *12–13), *reconsideration denied*, 2021 WL 3371621.

Furthermore, the exhibit listing N.G.'s diagnosis codes and injuries in connection with the accident-related treatment fails to remedy and further illustrates the inadequacy of MSP's pleading.  Based on Exhibit C, it appears that N.G. was taken to the hospital in

---

[10] In the FAC, although MSP refers to Hereford's alleged failure to pay for or reimburse medical expenses resulting from injuries sustained in automobile and other accidents, it merely alleges that N.G. was injured in "an accident."  FAC at ¶¶ 1–2, 48–51, 53–55.  In its opposition, MSP notes that members of assignor-MAOs, including EmblemHealth, were "insured under no-fault automobile insurance policies issued by Hereford" and "involved in car accidents requiring medical services."  Opp. at 3.

an ambulance;[11] N.G. underwent radiologic examinations of the knee[12] and pelvis[13] and a computed tomography (CT) scan of the pelvis[14]; and an electrocardiogram was performed.[15]  FAC Ex. C.  However, neither the FAC nor its exhibits allege facts from which the Court can reasonably infer that these medical services were necessary because of the accident.[16]  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *13, *reconsideration denied*, 2021 WL 3371621.  Accordingly, this calls into question the connection between the accident and the medical services provided to N.G.  Therefore, MSP has not adequately alleged that Hereford caused EmblemHealth harm as to the N.G. claim.

In summary, MSP has failed to adequately allege that EmblemHealth suffered an injury by incurring costs with respect to the N.G. claim that Hereford was required to reimburse as the primary payer.  Accordingly, the Court finds that MSP has not adequately alleged standing over the N.G. claim, and the claim is hereby dismissed.

---

[11] *See* FAC Ex. C (N.G.'s diagnosis codes and injuries in connection with N.G.'s accident), Doc. 26-3, entries on October 14, 2014, process code A0429.  Code A0429 is the code for ambulance service, basic life support, and emergency transport.  *See* A0429, https://www.findacode.com/code.php?set=HCPCS&c=A0429 (last visited Dec. 29, 2021).

[12] *See* FAC Ex. C, entries on October 14, 2014, process code 73562.  Code 73562 is the code for a radiologic examination of the knee.  *See* 73562, https://www.findacode.com/code.php?set=CPT&c=73562 (last visited Dec. 29, 2021).

[13] *See* FAC Ex. C, entries on October 14, 2014, process code 72170.  Code 72170 is the code for a radiologic examination of the pelvis.  *See* 72170, https://www.findacode.com/code.php?set=CPT&c=72170 (last visited Dec. 29, 2021).

[14] *See* FAC Ex. C, entries on October 18, 2014, process code 72192.  Code 72192 is the code for a computed tomography of the pelvis.  *See* 72192, https://www.findacode.com/code.php?set=CPT&c=72192 (last visited Dec. 29, 2021).

[15] *See* FAC Ex. C, entries on October 14, 2014, process code 93227.  Code 93227 is the code for an electrocardiogram.  *See* 93227, https://www.findacode.com/code.php?set=CPT&c=93227 (last visited Dec. 29, 2021).

[16] Although MSP argues that Hereford was "undoubtedly a primary payer for the items and services paid by [EmblemHealth], where Hereford . . . made payments for other claims submitted on behalf of N.G." related to an automobile accident on October 14, 2014, this allegation does not address whether the medical services at issue were also related to the same accident.  Opp. at 9; *see also id.* at 12; Rubin Affidavit Ex. G; Mot. at 15–16.

### C.      MSP's Article III Standing Over Its Exhibit A Claims

In addition to the N.G. claim, MSP alleges that it has standing to sue for the 63 claims listed in Exhibit A.  FAC at ¶ 36; *see also* FAC Appendix 2 at ¶ 5.  Exhibit A is a list of Medicare beneficiaries for whom EmblemHealth allegedly "made conditional payments for accident-related treatments subject to overlapping primary coverage from [Hereford], which payments have not been reimbursed," and for whom Hereford filed reports with CMS.  FAC at ¶ 25; *see also* Opp. at 5, 12 (noting that the claims in Exhibit A "are based on [Hereford's] reporting to CMS").  The allegations concerning the claims in Exhibit A are "even more conclusory than the allegations about the [ ] exemplar claims."  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *14, *reconsideration denied*, 2021 WL 3371621.  Exhibit A includes the name of the MAO that allegedly provided payment for services and was not reimbursed, the contract and plan number, the plan name, the address, and the insurance type.  *See* FAC Ex. A.  However, Exhibit A does not contain any information connecting any patient to a particular accident on a particular day, nor are there any factual allegations regarding the alleged accidents or the related injuries and medical services.  Therefore, the Court finds that MSP has not adequately alleged that it has standing to assert the claims listed in Exhibit A, and the claims are hereby dismissed. *See AIG Prop. Cas. Co.*, 2021 WL 1164091, at *14 (finding similarly limited information insufficient to allege standing for MSP's Exhibit A claims), *reconsideration denied*, 2021 WL 3371621.

### D.      MSP's Article III Standing Over Its Class-wide Claims

MSP alleges that it has standing to sue on a class-wide basis "on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-related

medical expenses, when [Hereford] should have made those payments as primary payer." FAC at ¶ 69; *see also id.* at ¶¶ 12, 27, 69–77.  However, aside from its conclusory allegations regarding the class members, MSP has provided no information about the class-wide claims.  *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *14 (dismissing the same plaintiff's universe of claims in a class action where plaintiff similarly provided no information about the claims), *reconsideration denied*, 2021 WL 3371621.  Therefore, the Court finds that MSP has not adequately alleged that it has standing over the class-wide claims, and the claims are hereby dismissed.

### E.      Leave to Amend the FAC

The Court declines to grant MSP leave to amend the Complaint again.  MSP has already amended the Complaint once with Hereford's consent pursuant to Rule 15(a)(2). *See* Doc. 27; *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (noting that leave to amend may be properly denied for "repeated failure to cure deficiencies").  As other courts have recognized, MSP has brought a number of these cases across the country, and, as a result, was "on notice from the outset that the issue of standing would be front and center."  *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 17 Civ. 1537 (JBM), 2019 WL 6311987, at *9 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021); *see, e.g.*, *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *15 ("But this is far from Plaintiff's first rodeo.  Plaintiff has brought many of these cases around the country . . . ."), *reconsideration denied*, 2021 WL 3371621; *Tech. Ins. Co., Inc.*, 2020 WL 91540, at *4 ("The Court is well aware that this action is one of many similar actions filed by Plaintiffs across the country.  This Court's decision to dismiss the complaint for lack of standing is similarly not singular, as it joins a growing

contingent of courts that have dismissed complaints brought by Plaintiffs due to various standing defects."); *New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *6 ("This case is one of dozens of putative class action suits filed in federal courts across the United States by MSP Recovery Claims, Series LLC or its affiliates. . . . In each of these cases, Plaintiffs file deficient complaints, rely on courts to point out the problems, and then repeatedly amend their pleadings until they get it right.").

Therefore, the Court declines to grant MSP leave to amend the Complaint again. *See, e.g.*, *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *15 ("Because Plaintiff has had plenty of trial runs and has already amended its complaint against these Defendants once, the Court declines to grant leave to amend again as it would be futile."), *reconsideration denied*, 2021 WL 3371621.

## F.      Dismissal Without Prejudice

However, because the Court dismisses the action for lack of standing, dismissal must be without prejudice.  *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." (citation omitted)). Without jurisdiction, the Court "lacks the power to adjudicate the merits of the case." *Carter*, 822 F.3d at 54–55.  Accordingly, the FAC is dismissed without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, MSP lacks Article III standing.  Accordingly, Hereford's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 37, and close the case.

It is SO ORDERED.

Dated:   January 11, 2022
         New York, New York

_____
         EDGARDO RAMOS, U.S.D.J.